DETERMINED IN THE

# FIFTH DEPARTMENT

AT

# GENERAL TERM,

## 𝕺𝖈𝖙𝖔𝖇𝖊𝖗, 1890.

---

MARIA MOELLER, as Administratrix, etc., Appellant, v.
H. AUSTIN BREWSTER and Others, Respondents.

*Contributory negligence of an employee engaged in testing castings — when a question for the jury.*

In an action to recover the damages resulting from the death of the plaintiff's intestate and husband, it appeared that the deceased had for a number of years been employed in testing castings used for steam-heating purposes and manufactured by the defendants ; that a new pattern of casting had been introduced into the defendants' shop, of which only four or five had been tested before the one from the explosion of which the death had occurred ; that this new pattern of casting had a larger interior cross-section than any which the deceased had previously been employed in testing, and that the greater the interior cross-section of the steam cavity the greater was the pressure to the square inch of a given force of steam, and consequently the greater the liability to explosion with the same thickness and strength of iron.

The appliances for testing these castings were the same, both before and after the introduction of the new pattern, and had been in use for seven or eight years in testing the castings of the earlier pattern without any explosion having taken place. The pressure of steam and the application of the hammer, by which the test was made, were both under the control of the plaintiff's intestate.

*Held,* that the question whether the plaintiff's intestate was chargeable with knowledge of the danger involved in testing these castings of the newer pattern, and with negligence in not adapting his mode of operation to the requirements of the changed condition of affairs, should have been submitted to the jury.

Exceptions ordered to be heard at the General Term in the first instance after a trial at the Monroe Circuit October 10, 1889, before the court and a jury, at which a verdict was rendered by direction of the court in favor of the defendants.

*Q. Van Voorhis*, for the motion for a new trial.

*H. McGuire*, opposed.

Dwight, P. J.:

The action was for damages resulting from the death of the husband and intestate of the plaintiff, caused, as is alleged, by negligence of the defendants. At the close of the evidence on the trial the defendants asked the court to direct a verdict in their favor, on the sole ground "that on the undisputed evidence in the case the plaintiff's intestate was guilty of contributory negligence," and the direction was given. That question was also the only one discussed in behalf of the defendants on the argument of this motion for a new trial, counsel declaring that he was content to stand or fall with the proposition above stated, thus conceding, for the purposes of this review, that the question of the defendants' negligence was a proper one for the jury. We think it would have been more in accord with the rule established by the later cases if both questions had been so treated. It requires a very plain case, indeed, to warrant the withdrawal of the question of contributory negligence from the jury. The Court of Appeals of our own State has lately gone so far as to say, in an opinion by its chief judge, that that question is for the jury "in all cases except those marked by gross and inexcusable negligence." (*Parsons* v. *N. Y. C. and H. R. R. R. Co.*, 22 N. Y. St. Rep., 697, 702.)

Without insisting upon the full force of the rule thus declared we think this case was one in which the fact of the negligence of the deceased should have been found by the jury if it was to defeat the plaintiff's action.

The defendants were manufacturers of steam-heating apparatus, and the deceased was a workman in their employ. His particular branch of the work was the testing, for leaks, of the cast-iron bases of radiators; and he was killed by the explosion of one of those bases while being tested by him. The testing was accomplished by means

of steam let on from the boiler connected with the engine which propelled the machinery of the works. The radiator being set up by the insertion of upright tubes into the base, a steam pipe from the boiler was connected with one end of the base, to admit the steam, and a rubber tube with the other end to permit the steam to pass off into a sewer or drain. Of course, the supply of steam must exceed the exhaust in order to produce a pressure sufficient for the detection of leaks, which were indicated by the escape of steam; and to control both the supply and the exhaust the two pipes were fitted with stop-cocks which might be wholly or partially closed by the operator. There was a class of small orifices sometimes found in the iron which were to be closed by a process of hammering, which had the effect of so expanding or flattening the particles of iron surrounding the orifice as partly to close it, and the process of rusting completed the operation. Of course, the danger of explosion of the base, with a given strength of material and construction, depended, in the first instance, upon the pressure of steam; but the evidence tended to show that that danger was increased by the vibration in the particles of iron produced by the hammering mentioned. It is probable that vibration, to some extent, was produced by any hammering of the iron; but the evidence tends to show that with a pressure of steam properly regulated, moderate blows of the hammer might be applied with safety, and that it was usual to apply the hammer when the steam was on, because only then could the operator discover the precise location of the orifice to be closed. It follows that safety from explosion, in this operation, depended largely upon the proper regulation of the pressure of steam, together with the proper use of the hammer, both of which were in the control of the operator, but, that both of these elements of danger were greater or less in proportion to the strength or weakness of material and construction employed in the casting operated upon. And this brings us to the fact, which the evidence tends to show, and upon which the plaintiff's cause of action, if she has one, may possibly depend, viz.: That the casting which exploded was of a new pattern, only just introduced into the defendants' shop, of which only four or five had been tested before this one, and which were of a larger interior cross-section than any which the deceased had previously been

employed in testing. It appears that the greater the interior cross-section, or interior diameter, of the steam cavity, the greater the pressure to the square inch of a given force of steam, and consequently the greater the liability to explosion with the same thickness and strength of iron. And so we find in this case that the deceased had been employed in testing bases with precisely the same appliances and in the same manner of operating, for seven or eight years, without, so far as appears, causing an explosion, until the introduction of the bases of the new pattern. The one which exploded with fatal effect was, as we have seen, only the fifth or sixth of those tested, and the one last before it had also been exploded, though without injuring any person, not by hammering, but by striking a corner on the floor or table, when being turned over with the steam on. From these facts there was room to argue that the pressure of steam and the manner of manipulation, with the hammer or otherwise, which the deceased had been accustomed to employ, was safe with the castings which he had been accustomed to test, but dangerous with those of the new size and pattern; and if so, the material question would be whether he was chargeable with knowledge of the danger in the case of the latter and with negligence in not adapting his mode of operation to the requirements of the situation. This question was to be determined, in view of all the circumstances of the case; and it would have been for the jury, if the case had been submitted to them, to attach to each of those circumstances its proper weight and determine the effect to be given to them as a whole. There was, for instance, the circumstance of the long experience of the deceased in the work; but, on the other hand, the fact that he was never a skilled mechanic; that he began at this place as a common laborer and had had no mechanical education except what he had gained by experience of the narrow routine of testing cast-iron radiator bases by the pressure of steam, and the closing of minute orifices by the use of a hammer. Whether from this experience he was likely to gain a knowledge of the mechanical principles involved in the inquiry whether it was safe to make use of the old methods under the new conditions, may have been a question in this case; if so, it was a question for the jury. There is a good deal of evidence in the case, of warnings which the deceased received about this time, especially from his foreman,

Widdowson, in respect to his method of testing, but it does not appear that any of these warnings had reference to the change in the pattern and size of the bases in use, and it is a question whether there was any evidence that his methods at this time were different from those which he had habitually employed through a long period of immunity from accident.

There are many other facts in the case of more or less importance as bearing upon the question of the negligence of the deceased, but none, we think, which render that question anything more or less than a question of fact for the jury.

We have no intention to intimate an opinion whether in the respect considered, a case was made for a recovery. We have reached the conclusion only that the question was one upon which the jury should have been permitted to pass. The motion for a new trial must, therefore, be granted.

CORLETT, J., concurred; MACOMBER, J., taking no part.

Motion for a new trial granted, with costs to abide the event.